**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANGELA BAGGETT, and
    Plaintiff,

v.

PAUL BAILEY, and the
COUNTY OF BERRIEN, MI,
    Defendants.

Case No.: 23-cv-85

Hon.:

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D. CONKLIN, PLC
Attorneys for the Plaintiff
4084 Okemos Road, Ste B.,
Okemos, MI 48823
Phone: (517) 332-3390
Fax: (517) 853-0434
collin@caseydconklin.com

**COMPLAINT and JURY DEMAND**

**STATEMENT OF THE CASE**

This is a case of unlawful retaliation for opposing a culture sexism in the Berrien County Sheriff's Department. Angela Baggett was, until the events described in this Complaint, a Deputy Sheriff in Berrien County. In 2016, Ms. Baggett complained about sex-based discrimination and harassment within the Department through internal procedures and, when that failed to remedy the ongoing problems, to the Equal Employment Opportunity Commission. She was continuously retaliated against which forced her to resign and accept a position with the Buchanan City Police Department. When she resigned, she laid out the ongoing iniquities in her letter of resignation. In a final act of retaliation, Sheriff Bailey proceeded to revoke her arrest powers within the County of Berrien, which has affected and continues to effect her employment with the City of Buchanan.

**PARTIES and JURISDICTION**

1. Plaintiff ANGELA BAGGET ("Plaintiff") is a United States Citizen and a permanent resident of Berrien County, Michigan which is within the geographical bounds of the United States District Court for the Western District of Michigan's Southern Division.

2. Defendant PAUL BAILEY is, and throughout the events described in this Complaint was, the Sheriff for Defendant COUNTY OF BERRIEN. He therefore has a regular place of business within the geographical bounds of the Western District. He is sued in his individual and official capacities.

3. Defendant COUNTY OF BERRIEN, MI is a State of Michigan municipality located within the geographical bounds of the Southern Division of the United States District Court for the Western District of Michigan.

4. Plaintiff was formerly employed as a Deputy Sheriff in the County of Berrien. This claim seeks to remedy discrimination she suffered while employed, as well as constructive discharge and ongoing retaliation after opposing same.

5. Defendant BAILEY, as the Sheriff of Berrien County, is a constitutional officer. *Vine v. Cnty. of Ingham*, 884 F.Supp. 1153, 1158 (WD MI 1995). Mich. Const. art. 7, § 4. The "sheriff's department" does not exist as a separate legal entity; it is simply an agent of the county. *Higgins v. Van Buren Cnty.,* No. 19-cv-554 at *7 (WD MI Nov. 1, 2019). Defendant COUNTY OF BERRIEN pays the salaries of deputies of the Berrien County Sheriff, including Plaintiff, at least in part through the County's general funds. And, Berrien County Sheriff's Deputies are subject to County employment policies and are overseen by the County's Human Resources Department. The Defendants COUNTY OF BERRIEN and SHERIFF OF THE COUNTY OF BERRIEN are both signatories to the Collective Bargaining Agreement with the Policeman's Labor Counsel that governed Plaintiff's employment, and both entities were listed jointly as the "employer" throughout. For this reason, Defendants BAILEY and BERRIEN COUNTY are joint employers, jointly and severally liable for the employment discrimination which Plaintiff suffered during her term as a Berrien County Sheriff's deputy. *See eg Swallows v. Barnes Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997) (joint employer doctrine).

6. The Court may exercise general *in personem* jurisdiction over the Defendants because of their permanent presence within the geographical bounds of the Court. In the alternative, the Court may exercise specific jurisdiction over the dispute because the events giving rise thereto occurred within the Court's geographical bounds.

7. Venue is properly laid in the Western District of Michigan's Southern Division pursuant to 28 USC §§ 1391(b)(1) and (b)(2).

8. This Court may hear the claims sounding in Title VII pursuant to 2000e-5(f)(3) because it is a "judicial district in the State in which the unlawful employment practice is alleged to have been committed," the "judicial district in which the employment records relevant to such practice are maintained and administered," and the "judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice."

9. The Court may exercise Subject Matter Jurisdiction over the claims emanating from federal law pursuant to 28 USC § 1331. The Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

## GENERAL ALLEGATIONS

10. Plaintiff was sworn as a Berrien County Sheriff's deputy in 2013. She served with distinction. She received positive performance reviews and, in 2016, was awarded recognition as "Deputy of the Year.

11. Plaintiff frequently observed a culture of overt sexism and blatant hostility to female deputies among male Sheriff's deputies and supervisors employed by the Berrien County Sheriff.

12. On January 30, 2016 Plaintiff was at dinner at a local restaurant with a fellow deputy, Deputy Troup, and one of her superiors, Sergeant Yech. The conversation turned to another female deputy, Deputy Pifer. Sergeant Yech commented "I wouldn't mind putting my penis in that." Plaintiff found this comment demeaning to women in general, and Pifer in particular, and highly inappropriate from a superior officer.

13. Sergeant Yech frequently spoke down to female deputies. On February 4, 2016 Plaintiff and Sergeant Yech were on scene for a personal injury call. Plaintiff was assigned to direct traffic around the crash, while another deputy aided in transporting the injured party to the

hospital. Sergeant Yech frequently asked Plaintiff "you got this" in a demeaning tone which seemed to indicate he felt she was incapable of performing her duties. As they were leaving the scene, Sergeant Yech physically slammed his body into Plaintiff with sufficient force to send her staggering. "What was that?" she demanded and he did not respond.

14.    Sergeant Yech's bullying continued for several months. He repeatedly accused Plaintiff nonsensically of "dodging calls" and other miscellaneous misconduct.

15.    Assignments were seniority based. By reason of their seniority, three female deputies including Plaintiff were assigned to Niles Township.

16.    On September 27, 2016 Captain Boyce, Sergeant Yech's superior, caused Yech to write a letter attesting to supposed "performance issues" with three female deputies assigned to Niles Township afternoon shifts, including Plaintiff. Only one person was every interviewed about the letter and the concerns were dropped, which indicates that the allegations of misconduct were largely contrived. This was all an overt attempt to split the three females up into areas that they had not bid on for shifts or were longer driving distances for them.

17.    Having had enough, Plaintiff proceeded to submit a formal complaint to Defendant BERRIEN COUNTY'S Human Resource Director, Shelly Jasper. Her letter clearly stated that the bases for the complaint included sex-based discrimination and harassment, stating in pertinent part that "[o]n another occasion this year, Sgt. Shawn Yech had made a sexual comm[ent] about another female deputy that was very offensive to the female deputy as well as me" referring to Sergeant Yech's comment at dinner that he would "like to put [his] penis" in Deputy Pifer. Plaintiff's letter also noted that Sergeant Yech "wrote an employee letter regarding Nile Twp. afternoon deputies" which she went on to say, given the questionable circumstances and overt targeting of the female officers assigned to Niles, "is harassment."

5

18.     County HR Director Jasper wrote Plaintiff back and "urged" her to provide Undersheriff Heit and/or Defendant BAILEY with a copy of the letter "before the County's Human Resource Director intervenes" in order to "provide [her] chain-of-command the opportunity to address [her] issues internally."

19.     Plaintiff proceeded to transmit a copy of her complaint to Undersheriff Heit and it was received on or about November 21, 2016.

20.     Undersheriff Heit and Chief Deputy Boyce investigated Plaintiff's allegations. During the investigation, Sergeant Yech and Deputy Troup denied that he made the "penis in her" comment about Deputy Pifer. But, both men *admitted* that Sergeant Yech had made comments about Deputy Troup's wife's breasts. Despite this fact, Undersheriff Heit concluded that he "[did] not find any evidence that supports the claims [Plaintiff] made regarding being harassed or bullied by Sergeant Yech" and closed the investigation, with no remedial action taken whatsoever, on February 7, 2017.

21.     Defendant BAILEY, as the Sheriff, has a duty to review investigations of serious misconduct among and towards persons in his chain of command. Defendant BAILEY therefore knew, or should have known, that Plaintiff had made a complaint of sex-based harassment, bullying, and discrimination in the Berrien County Office of the Sheriff.

22.      Thereafter, the harassment and discrimination towards female Berrien County Sheriff's deputies continued unabated and, in fact, intensified. Plaintiff was constantly subjected to unreasonable threats of write-ups and general harassment.

23.     In September of 2021 Plaintiff began having difficulties getting Dispatch to respond to requests for emergency backup while working in the field.

6

24. In way of example, on one occasion she had received a call for a 240-lb individual with a history of calls from the Sheriff's Department for mental disturbances. He became combative. Plaintiff called for backup. Plaintiff knew from experience that when a *male* deputy would call for backup in a dangerous situation like this the expectation was that another unit would be present in five minutes or less. This time, it took them over 20 to arrive. In the delayed response, she could have been seriously injured or even killed.

25. Similar incidents to the above continued to occur.

26. Plaintiff observed that delays in providing backup to her, as well as other female deputies, became more and more common while the response time to a *male* deputy's backup request remained expedient.

27. During this period of time, Plaintiff's chain of command included Lieutenant Zehm.

28. Plaintiff was normally assigned to Niles Township. Lieutenant Zehm was forcing her out of this assignment so that male deputies in his command did not have to work Niles Township. This was a plain violation of policy. It also had the effect of benefiting male Deputies over females. Plaintiff contacted Captain Miller about this behavior by Lieutenant Zehm.

29. Plaintiff also observed a marked disparity in the provisions of mandatory overtime among the deputies, as between herself and other male deputies.

30. In or about September 2021 a male deputy, Deputy Woerdehoff, refused to work mandatory overtime, cursed at Officer In Command Bowman, and refused to work stating he would call Undersheriff Heit. He was not immediately disciplined.

31. Deputy Woerdehoff was Plaintiff's same rank and was subject to the same chain of command in the Department as she was.

7

32. On or about November 8, 2021 Plaintiff was scheduled to teach a class in the evening after her regular schedule. She had advised her supervisors that this was the case two weeks in advance. That afternoon Lieutenant Zehm, demanded that she work "mandatory overtime" citing staffing shortages and incumbent needs. Plaintiff should not have even been called for the mandatory overtime per existing procedures. Plaintiff observed that other male deputies with pre-existing obligations on shift were permitted to avoid the mandatory overtime. She was unable to work the mandatory overtime, because of her pre-existing obligation, and she was given a formal discipline and a two-day suspension as a result of failure to work "mandatory overtime."

33. Plaintiff proceeded to grieve the discipline she received. During her grievance proceedings, she brought up the sex-based disparity between the two-day discipline she received for missing mandatory overtime, and the non-discipline that Deputy Woerdehoff received for the same conduct. In response, Woerdehoff was thereafter disciplined. But, he only received a *one-day* suspension.

34. On February 17, 2022 the Berrien County Sheriff's deputies were subject to eight days of TRU training, which resulted in a staffing shortage for road patrol. Despite this fact a male Deputy, Hopkins, was permitted to use a sick day.

35. Deputy Hopkins was of Plaintiff's same rank, and within her same chain of command. "Staffing shortages" was the basis for calling Plaintiff to "mandatory overtime" on November 8th, and the same concerns militated against permitting Hopkins to use a sick day as to permit Plaintiff to avoid mandatory overtime. But, Hopkins was a male so he was permitted to use the sick day. Hopkin's used a sick day for day shift and then was allowed to work overtime on afternoon shift, in which Plaintiff was forced over as well.

36. On March 15, 2022 Plaintiff filed EEOC Charge Number 471-2022-01089 which alleged sex-based discrimination.

37. The allegations and the charge were forwarded to the Sheriff's office by the EEOC, and it proceeded to file a Position Statement in response to same on April 29, 2022.

38. The lack of accountability for males in the department, compared to the heightened scrutiny of females, continued unabated even after the EEOC charge.

39. On April 30, 2022 Lieutenant Johnson was the only deputy working South County. He nevertheless left his post with no coverage to watch his grandchildren play a sporting event. He was never disciplined.

40. In or about this period of time, there was an incident involving male Deputies Woerdehoff and Culberson. A Benton Harbor officer had brought in a prisoner to the jail. The prisoner became combative. There is a buzzer in the holding area where one presses for help. Deputies Woerdehoff and Culberson were assigned to the monitoring station and were therefore responsible to provide immediate aid in response to such a call. As the prisoner continued to fight, the officer pressed the call button. The response was "we're busy." This was, of course, completely inappropriate because of the impending threat to this officer's safety. He buzzed again. No response. The fight continued. He pressed *again* and this time was told "the more you press it, the longer we're going to take to respond to you." These male deputies were never disciplined for this serious misconduct on their part.

41. On April 29, 2022 the EEOC transmitted a Notice of Right to Sue to Plaintiff in Charge No. 471-2022-01089.

42. The ongoing harassment and discrimination rendered continued employment in the position of Berrien County Sheriff's deputy untenable to Plaintiff and she sought other work.

43. Plaintiff applied for, and received, a position as an officer with the City of Buchanan Police Department.

44. On May 16, 2022 Plaintiff wrote Defendant BAILEY a letter of resignation as a Deputy of the Berrien County Sheriff. Her letter explicitly advised that the reasons included the "lack of accountability from some administration and the lack of accountability of other deputies" referring to the failure to discipline males for misconduct and also the lack of "adequate backup" in Niles Township, saying "[w]e being Sheriff's deputies signed up to serve and protect, not to be killed because we have no back up."

45. In Berrien County, persons performing arrests must be sworn and certified by the Sheriff and hold an Oath of Office, commonly referred to as a "deputy card." In the past, when Deputies have left the Berrien County Sheriff for other agencies within the County, they have been permitted to retain their Oath of Office and deputy card. This allows them to continue to make arrests within Berrien County on behalf of the new employing law enforcement agency.

46. Deputy Gage Hutchinson, for instance, left the Berrien County Sheriff to work for Saint Joseph Township around the same time as Plaintiff's departure for the City of Buchanan. He was permitted to retain his Oath of Office, deputy card, and arrest powers.

47. Plaintiff, in fact, is unaware of any Deputy who has departed from the Berrien County Sheriff who has had their Oath of Office or "deputy card" revoked. Defendant BAILEY's usual and customary practice when a deputy moves to a different police agency in Berrien County is to leave same in place, because it permits them to continue to make arrests for the new agency for whom they are employed outside of the locality in which the agency operates.

48. On July 21, 2022 Defendant BAILEY wrote Tim Ganus, the Director of Public Safety for the Buchanan Police Department. He indicated that, "I will be revoking Angela Baggett's Oath of Office as of today's date, July 21, 2022."

49. Because of BAILEY's revocation of the Plaintiff's Oath of Office and "deputy card," she is severely limited in her ability to make arrests outside the City of Buchanan for the City of Buchanan Police Department. This has affected, and continues to affect, her current employment significantly.

50. On November 3, 2022 Plaintiff submitted a Charge of Discrimination to the EEOC, Charge Number 471-2022-04744, which alleged "I believe I was discriminated and retaliated against because of my sex (female) in violation of Title VII of the Civil Rights Act, as amended."

51. On November 15, 2022 the EEOC issued a Notice of Right to Sue in Charge Number 471-2022-04744.

**Count I: Equal Protection, Sex Discrimination in Public Employment**
**42 USC § 1983**
*All Defendants*

52. As a governmental employee, Plaintiff had a right to equal treatment by her governmental employer that was guaranteed by the 14th Amendment to the Constitution. *See Washington v. Davis*, 426 U.S. 229, 243 (1976). A state actor violates this provision when they discriminate against an individual in an employment setting based on sex. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988); *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003). Such discrimination may be challenged through 42 USC § 1983. *Id.* Such a claim mirrors that of a sex discrimination claim under Title VII, but does not require administrative exhaustion. *Id.*

53. The Defendant Berrien County Sheriff has committed disparate treatment towards Plaintiff by:

   a. Failing and refusing to provide priority, timely backup at the request of female female officers, while providing immediate backup at the request of males,

   b. Providing an invidious double-standard to female deputies by disciplining them harshly for conduct tolerated by male deputies, and

   c. Applying department standards and directives to male and female deputies in disparate ways.

54. In way of example and not limitation, Plaintiff has frequently observed, starting in September of 2020, that when she, a female deputy, would call for backup on scene there would be a significant delay in responding. She has observed that the response time to male deputies, calling under similar circumstances, is significantly faster.

55. Plaintiff has personally been disciplined, both formally and informally, for perceived minor infractions and violations of policy. She has frequently and continuously been accused of "missing calls" and otherwise not performing her duties to standard. Meanwhile, as detailed above, she has observed significant and frequent violations by male deputies who have received absolutely no discipline whatsoever.

56. Plaintiff has also suffered demonstrable, iniquitous application of the mandatory overtime requirement. She was "mandated" to work overtime on November 8, 2021. She could not, due to a pre-existing commitment of which her superiors were aware, and she suffered an immediate two-day suspension as a result. Meanwhile, a similarly situated deputy, Deputy Woerdehoff, *swore* at a superior officer and *refused* a mandate around this same period of time. He was *not*

immediately disciplined; in fact, he was only disciplined *after* Plaintiff complained about the sex-based iniquity during her grievance. And, he only ever received a *one-day* suspension.

57. Plaintiff, a female's, deputy certification and arrest powers outside of the City of Buchanan were revoked after leaving the Berrien County Sheriff for another police agency within the County. Other similarly situated *male* deputies who transferred to different departments during this same period of time were permitted to retain their certification and arrest powers..

58. The conduct described above was known to managerial-level officials at the County of Berrien, including the Berrien County Human Resource Director, the Undersheriff, and the Defendant Sheriff BAILEY himself. Yet, it was permitted to continue.

59. In *Monell v. New York City Dept. of Social Services,* 436 US 658, 691 (1978) the Supreme Court concluded that municipal liability under 42 USC § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature." In *Pembauer v. City of Cincinnati,* 475 US 469 (1986) the Supreme Court abrogated *Monell* by holding that when an "ultimate decision maker" in a municipal organization is involved in the deprivation, or when that "action is directed by those who establish government policy" the municipality will be liable for the actions. *Pembauer,* in fact, held that a municipal organization could be held vicariously liable because a Sheriff was personally involved in the unconstitutional acts complained of.

60. Defendant BAILEY, as the Sheriff for Defendant COUNTY OF BERRIEN, was the "ultimate decision maker" with respect to the application of policy to deputies. He was the ultimate decisionmaker as to the outcome of complaint of discrimination. And, he was the ultimate decisionmaker as to the decision to revoke deputy certification and arrest powers.

Therefore, Defendant County of Berrien is vicariously liable for the individual acts he took in violation of Plaintiff's First Amendment Rights, pursuant to 42 U.S.C. § 1983.

61. Plaintiff suffered ongoing anger, outrage, stress, and humiliation as a result of the disproportionate treatment between male and female deputies by the Berrien County Sheriff.

62. Plaintiff's regular work for the Berrien County Sheriff was rendered intolerable by the ongoing mistreatment, such that she was forced to resign and seek alternate employment.

63. Plaintiff suffered lost wages and compensation as a result of her constructive termination from her employment.

64. Plaintiff has suffered, and will continue to suffer, attorney's fees and costs from the opposition of this violation of her rights.

## Count II: Sex Discrimination
### Title VII of the Civil Rights Act of 1964
*County of Berrien, Sheriff Bailey in his Official Capacity*

65. Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers, this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983. *Kitchen v. Chippewa Valley Schs*, 825 F.2d 1004, 1011 (6th Cir. 1987). Plaintiff will therefore incorporate the factual statements and claims for damages contained in Count I – Sex Discrimination in Violation of the Equal Protection Clause, as if fully restated herein in support of liability under this theory of liability.

### Count III: Sex Discrimination
### Elliott Larsen Civil Rights Act
*All Defendants*

66. Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") provides, in pertinent part, that "an employer shall not … [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex . . ." MCL 37.2202. The ELCRA is largely coextensive with Title VII, with the exception that the statute's's definition of "employer," unlike its federal counterparts, is broad enough to allow for suit against discriminating managers in their capacity as individuals. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005).

67. Defendants BERRIEN COUNTY and Defendant PAUL BAILEY, as the Sheriff of Berrien County, are Plaintiff's employer as defined by the statute.

68. Defendant PAUL BAILEY, as an individual, is also Plaintiff's "employer" as defined by the statute.

69. Because ELCRA claims are co-extensive to Title VII, Plaintiff will incorporate the factual statements and claims for damages contained in Count I – Sex Discrimination in Violation of the Equal Protection Clause, as if fully restated herein, in support of liability under this theory.

### Count IV: First Amendment Retaliation
### 42 USC § 1983
*All Defendants*

70. Plaintiff engaged in the following activities protected by the First Amendment of the United States Constitution within the three-year limitations period to such a claim:

    a. Seeking redress of grievances, by opposing the iniquitous application of overtime policies between herself and other male deputies by grieving same in November of 2021.

    b. Seeking redress of grievances and criticizing public officials by filing EEOC Charge Number 471-2022-01089 on March 15, 2022.

    c. Criticizing public officials by identifying the ongoing lack of accountability and failure to provide back in her May 16, 2022 resignation letter to Defendant BAILEY.

    d. Seeking redress of grievances and criticizing public officials by filing EEOC Charge Number 471-2022-04744 on November 3, 2022.

71. Defendant BAILEY was aware of each of the foregoing actions on Plaintiff's part.

72. Defendants retaliated against Plaintiff for her protected activity by:

    a. Failing to honor her requests for backup during dangerous situations she encountered while conducting her duties as a Sheriff's deputy in the field, and

    b. Revoking her arrest certification.

73. Each of the aforesaid actions could deter a person of ordinary firmness from engaging in the actions that Plaintiff did.

74. There is a causal connection between Plaintiff's protected conduct identified herein and the adverse actions Defendants took against her. In way of example and not limitation,

    a. The failure to provide backup started only after Plaintiff's prior opposition to discriminatory conduct within the Department.

    b. Plaintiff is the only person who has left the Berrien County Sheriff who has ever had Defendant BAILEY proceed to revoke a deputy arrest certification.

75. Plaintiff has suffered damages, as more fully laid out before, including but not limited to:

    a. Interference with her employment as a Buchanan City Police Officer by reason of revocation of her arrest privileges,

    b. Humiliation, outrage, anger, and frustration as a result of Defendant's wrongful actions outlined herein, and

    c. Attorney's fees and court costs in opposing Defendants' unlawful violation of his rights.

76. Due to the flagrant, willful, and wanton violation of Plaintiff's rights she is also entitled to an award of punitive and exemplary damages pursuant to applicable law.

### Count V: Title VII Retaliation
### Title VII of the Civil Rights Act
*County of Berrien, Sheriff Paul Bailey Official Capacity*

77. Title VII prohibits discrimination by an employer "against any of his employees or applicants for employment" . . . "because such individual, . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [Title VII]."

78. Plaintiff engaged in activity protected by Title VII when she

    a. Opposed sex-based discrimination in the application of overtime policies between herself and other male deputies by grieving same in November of 2021.

    b. filed EEOC Charge Number 471-2022-01089 on March 15, 2022.

    c. Identified and opposed the ongoing sex-based discrimination in application of policy and provision of backup in her May 16, 2022 resignation letter to Defendant BAILEY.

    d. filed EEOC Charge Number 471-2022-04744 on November 3, 2022.

79. Defendants retaliated against Plaintiff for her protected activity by:

   a. Failing to honor her requests for backup during dangerous situations she encountered while conducting her duties as a Sheriff's deputy in the field, and

   b. Revoking her arrest certification.

80. Each of the aforesaid actions could deter a person of ordinary firmness from engaging in the actions that Plaintiff did.

81. Plaintiff has suffered the following damages as a result of the Defendants' violation of her rights:

   a. Lost front pay and benefits,

   b. Emotional pain and distress,

   c. Attorney's fees in opposing said violations.

82. Plaintiff is also entitled to punitive damages, by reason of Defendants' willful and wanton violation of Plaintiff's rights.

### Count VI: ELCRA Retaliation
### Elliott Larsen Civil Rights Act
### *All Defendants*

83. Michigan's ELCRA prohibits an employer from retaliating or otherwise discriminating against an employee who opposes a violation of the Act, or participates in an investigation into violation of the same. The ELCRA is largely coextensive with Title VII, with the exception that the statute's's definition of "employer," unlike its federal counterparts, is broad enough to allow for suit against discriminating managers in their capacity as individuals. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005).

84. Plaintiff will therefore incorporate by reference the factual assertions and claims of damages stated in Count V – Title VII retaliation as against all Defendants as if fully restated herein.

### Count VII: Injunctive Relief, Reinstatement
### Ex Parte Young
*As Against Defendant Sheriff Bailey*

85. Plaintiff repeats and re-alleges the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

86. State officials, sued in their official capacity for prospective relief, are not entitled to Eleventh Amendment immunity from suit. *Ex Parte Young*, 209 US 123 (1908). Claims for reinstatement are prospective in nature and appropriate subjects for *Ex Parte Young* actions. *Carten v. Kent State University*, 282 F.3d 391, 396 (6th Cir. 2002). A party may prevail on a claim for reinstatement against a State Official, named in their official capacity, pursuant to *Ex Parte Young*, if it is shown that their termination was in violation of their rights under federal law. *Diaz v. Michigan Dep't of Corrections*, 703 F.3d 956 (2013). Generally, the state official with the power to reinstate the wrongfully terminated employee is the proper defendant to a claim for resinstatement. *Crugher v. Prelesnik*, 761 F.3d 610 (6th Cir. 2014) (Hon. Clay dissenting).

87. As noted herein, Defendant BAILEY revoked Plaintiff's deputy certification in retaliation for exercising his First Amendment rights and for engaging in opposition activity protected by state and federal law.

88. The revocation of Plaintiff's certification is a continuing violation that the court may remedy through prospective injunctive relief.

89. Plaintiff, therefore, requests that this Honorable Court enter an injunctive order ending the continuing violation of his rights, and requiring Sheriff BAILEY to reinstate her deputy certification.

**WHEREFORE** Plaintiff demands the following relief:

1. INJUNCTIVE RELIEF requiring Defendant Bailey to immediately end the continuing violation of Plaintiff's constitutional rights by returning him to his rightful status as a Sheriff's Deputy,

2. COMPENSATORY DAMAGES in an amount determine to be appropriate by the jury,

3. EXEMPLARY DAMAGES in an amount determined appropriate by the jury,

4. PUNITIVE DAMAGES in an amount determine appropriate by the jury,

5. ATTORNEYS FEES and COSTS, pursuant to statute,

6. Pre and post judgment interest,

7. Such other relief as this Court may deem appropriate in law or equity.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully Submitted,

Dated: 1/24/2023

_____/s/ Collin H. Nyeholt_____
Collin H. Nyeholt (P74132)
Attorney for the Plaintiff